## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA, ex rel.     )
GLEN MULREADY, Insurance     )
Commissioner, as Receiver for Red     )
Rock Insurance Company, Inc.,     )
    )
       Plaintiff,     )
    )
v.     )       Case No. CIV-20-00782-JD
    )
WESTCHESTER FIRE     )
INSURANCE COMPANY,     )
a Pennsylvania corporation,     )
    )
       Defendant.     )

## <u>ORDER</u>

Before the Court is a Motion to Dismiss filed by Defendant Westchester Fire Insurance Company ("Westchester") ("Motion to Dismiss") [Doc. No. 19]. Plaintiff State of Oklahoma, ex rel. Glen Mulready, Insurance Commissioner, as receiver for Red Rock Insurance Company ("Mulready") filed a response [Doc. No. 21], and Westchester filed a reply [Doc. No. 22]. Mulready, with leave of Court, filed a surreply [Doc. No. 26].

After the initial briefing, the Court held a telephonic status conference to discuss and flag for the parties two issues to address in supplemental briefing: (1) whether Mulready, as receiver for Red Rock Insurance Company ("Red Rock"), has standing in his status as a claimant to bring the claims alleged; and (2) whether developments with the Sargent Litigation and the death of Rodney Sargent impact whether an actual case or controversy exists. [Doc. Nos. 31, 32]. The Court also entered a supplemental briefing schedule. *See* [Doc. No. 32]. Thus, additionally before the Court are Mulready's

Supplemental Brief [Doc. No. 33], Westchester's Supplemental Brief in Support of its

Motion to Dismiss Plaintiff's Complaint [Doc. No. 35], Westchester's Response to

Mulready's Supplement [Doc. No. 36], and Mulready's Response to Westchester's

Supplemental Brief [Doc. No. 37].

For the following reasons, the Court grants Westchester's Motion to Dismiss and

dismisses the Complaint [Doc. No. 1].

I.    **BACKGROUND**

A.    **Factual background of the litigation**

Asserting breach of contract and anticipatory repudiation claims, Mulready seeks a

declaration under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, to declare

the rights and obligations under an insurance policy ("the Policy") issued by Westchester

to Red Rock's parent company, BMSI Holdings, Inc. ("BMSI"). *See* Compl. ¶ 5.

Mulready, as the Oklahoma Insurance Commissioner, was appointed as the receiver for

Red Rock, which is in liquidation proceedings in Oklahoma County District Court, Case

No. CJ-2014-4353. *Id.* ¶ 1. As receiver, Mulready is vested with the title to all contracts

and rights of action of Red Rock. *Id.*

BMSI had an employment agreement with Rodney Sargent through which Sargent

became employed as the president and chief executive officer of BMSI and its

subsidiaries, including Red Rock.[1] *Id.* ¶ 7. As director and officer, Sargent had

contractual obligations, as well as fiduciary duties of due care, loyalty, and good faith and

---

[1] Red Rock is formerly known as BancInsure. *Id.* ¶ 6. The Court will refer to it as
Red Rock throughout this Order.

fair dealing. *Id.* ¶¶ 8–9. Under Sargent's leadership, Red Rock expanded its offering of workers' compensation ("WC") insurance products. *Id.* ¶ 10. As part of this decision, Red Rock and ReliaMax Underwriting Group, LLC ("ReliaMax") entered into an agreement through which Red Rock would write high-deductible WC insurance and related liability policies in certain states where Red Rock was licensed to do business. *Id.* ReliaMax was appointed as the general agent for this new line of business. *Id.* Mulready asserts that ReliaMax received a commission that was grossly in excess of the industry standard, and this incentivized ReliaMax to write new WC business without regard to the risk. *Id.* ¶ 11.

Mulready alleges that Sargent failed to disclose the risks imposed by the ReliaMax agreement and failed to monitor the improper underwriting risks undertaken by ReliaMax. *Id.* As a result, Mulready asserts that Sargent breached his contractual duties and his fiduciary duties of due care, good faith, and loyalty to Red Rock. *Id.* ¶¶ 12–13. Red Rock sustained substantial underwriting losses and losses in commissions that were unreasonably paid to ReliaMax. *Id.* ¶ 12. Red Rock was also downgraded because of Sargent's conduct. *Id.* ¶ 11.

Mulready notified Sargent of Red Rock's claims of breach of contract, breach of fiduciary duty, gross negligence, and negligence, on April 28, 2016, and Sargent notified Westchester. *Id.* ¶ 13. On July 12, 2016, Westchester denied coverage to Sargent, relying on Endorsement No. 6 of the Policy, which amends an exclusion section. *Id.* ¶¶ 14–15. Westchester claimed that the exclusion precluded coverage because the claim was made by the Oklahoma Insurance Commission, a regulatory agency, in its capacity as receiver for Red Rock. *Id.* ¶ 15.

After Westchester's denial of coverage to Sargent, Mulready filed an action against Sargent in Oklahoma County District Court on October 20, 2017. *See* Okla. Cnty. Case No. CJ-2017-6072. The Complaint refers to this as the Sargent Litigation. *See* Compl. ¶ 23. However, after the filing of the Complaint, Rodney Sargent passed away and Mulready voluntarily dismissed the Sargent Litigation against Sargent without prejudice and then re-filed it against Sargent's estate. *See* Okla. Cnty. Case No. CJ-2023-209. That action remains pending.[2]

Mulready also sued Westchester over its denial of coverage for Red Rock's employment- and fiduciary-related claims against Sargent. *See generally* Compl. According to Mulready, "[w]hen read as a whole, the Policy unambiguously provides coverage for Sargent for a covered claim . . . ." *Id.* ¶ 18. Mulready alleges that Endorsement No. 6 of the Policy is not intended to exclude claims brought by any state

---

[2] The Court may take judicial notice of court dockets, court records, and public records. *See Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1107 n.18 (10th Cir. 2007) (citing Fed. R. Evid. 201; *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979)). The Complaint alleges that following Westchester's denial of coverage to Sargent, Mulready sued Sargent in the District Court of Oklahoma County, Case No. CJ-2017-6072. Compl. ¶ 23. Although the Complaint alleges that the Sargent Litigation remains pending and that an actual controversy exists, *id.* ¶¶ 23, 27, the Court judicially notices that Mulready dismissed the Sargent Litigation without prejudice and that the state court docket indicates that Rodney Sargent has passed away. *See* Dist. Ct. of Okla. Cnty., Case No. CJ-2017-6072, *available at* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2017-6072&cmid=3591620 (last visited Sept. 25, 2024). The Court also judicially notices that Mulready re-filed claims from the original Sargent action against Ryan Sargent, in his capacity as the Executor of the Estate of Rodney N. Sargent, within one year of the dismissal under Oklahoma's savings statute, Okla. Stat. tit. 12, § 100. *See* Dist. Ct. of Okla. Cnty., Case No. CJ-2023-209, *available at* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2023-209 (last visited Sept. 25, 2024).

regulatory agency, only those brought by banking-related agencies. *Id.* ¶ 16 (explaining that the endorsement excludes claims brought by the "Resolution Trust Corporation, Office of Thrift Supervision, Federal Deposit Insurance Corporation, Comptroller of the Currency, *or similar federal or state agency* . . . ."). Mulready further alleges that the "Insured v. Insured" exclusion included in the Policy's Directors & Officers and Company Coverage Section specifically exempts claims brought by a receiver. *Id.* ¶ 18.

### B.    Procedural history before this Court

Westchester has moved to dismiss the Complaint. Westchester contends that Mulready's claims are an impermissible direct action against the liability insurer for Sargent, and that the Policy's insuring clauses are not triggered by Mulready's demand for coverage. Westchester argues that the Complaint should be dismissed as a matter of law.

Specifically, relying on *Daigle v. Hamilton*, Westchester asserts that Oklahoma law does not allow a prejudgment claimant (here, Mulready as receiver for Red Rock) to assert a direct action against a tortfeasor's insurer (here, Sargent's insurer, Westchester). 782 P.2d 1379, 1383 (Okla. 1989). In *Daigle*, the Oklahoma Supreme Court held that an injured party could not maintain a direct action against the unserved tortfeasor's insurance company. *Id.* Because it was a question of first impression in Oklahoma, the court looked to other jurisdictions that had considered the question. *Id.* at 1380. The court noted that most jurisdictions had ruled that an insurer could not be directly sued by a plaintiff. *Id.* "The reasons given for the prohibition . . . includ[ed] . . . lack of privity between the injured plaintiff and the insurer . . . ." *Id.*

But that line of cases is not on point because here, the Court is dealing with an insured party under the Policy, not a third-party claimant unconnected to the insurer. BMSI is listed as the named insured on the Policy [Doc. No. 19-2 at 1], and the Policy provides that "Company" includes the parent company and any subsidiary. *Id.* at 8. Thus, Red Rock is an insured party under the Policy. What Red Rock is purporting to do, however, is to seek a declaratory judgment against Westchester for Westchester's denial of coverage to Sargent for a claim made by Red Rock against Sargent over Sargent's alleged breach of the employment agreement and breach of fiduciary duties.

Thus, the appropriate questions before this Court are whether Red Rock, as one insured under the Policy, has standing to seek declaratory judgment on claims involving another insured, i.e., Sargent, and whether that presents an actual case or controversy, considering the dismissal of the Sargent Litigation following Sargent's death and the re-filing of the action against Sargent's estate. Following the initial briefing, the Court asked the parties to address these questions and analyze whether Mulready has standing to bring this action based upon the claims he alleges in the Complaint, the language of the Policy, and what the parties perceive to be governing case law, including *Colony Insurance Company v. Burke*, 698 F.3d 1222 (10th Cir. 2012). [Doc. No. 32 at 1 n.1]. Both parties have now done that in their supplemental briefing on the Motion to Dismiss.

## II.     <u>STANDARD OF REVIEW</u>

Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) if the Complaint, standing alone, is legally insufficient to state a claim upon which relief can be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05

(10th Cir. 2017). The Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). But the Court disregards assertions devoid of further factual allegations that are "conclusory" or a "formulaic recitation" of the law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may consider documents referred to in or attached to the Complaint if the documents are central to the claims and the parties do not dispute their authenticity. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282–83 (10th Cir. 2019).

## III.    **DISCUSSION**

Westchester concedes that Mulready has Article III standing[3] but asserts that Mulready does not have contractual standing under the Policy or statutory standing under

---

[3] Westchester also concedes that the re-filing of the state action against Sargent's estate presents an actual case or controversy between Mulready and Westchester. [Doc. No. 35 at 2]. The Court has an independent duty to determine whether a case is moot before proceeding to the merits, and the review for mootness occurs at all stages of litigation. *See Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (citations omitted). A case can become moot if an event occurs while a case is pending "that makes it impossible for the court to grant 'any effectual relief whatever to a prevailing party.'" *Id.* at 1213 (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). "The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." *Id.* (citation omitted). The underlying controversy before the Court is whether Sargent is entitled to coverage under the Policy. Here, the Court is satisfied that its decision could settle "some dispute which affects the behavior of [Westchester] toward [Mulready]" given the pending action against Sargent's estate. *Id.* (explaining that DJA actions must meet the same mootness principles as any other action).

the Oklahoma Uniform Insurers Liquidation Act ("OUILA"), Okla. Stat. tit. 36, § 1922, to bring the claims in this action against Westchester. *See generally* [Doc. No. 35]. Westchester argues that there is no grant of coverage in the Policy that provides Red Rock with any rights to enforce the coverage alleged, which is that Red Rock seeks to recover its own losses from Sargent's misconduct. *See id.* at 8–9. Westchester maintains that the Court must look to Mulready's alleged status as a claimant, rather than his status as an insured, to determine his standing to bring the claims. *Id.* at 12. Finally, under the language of OUILA, Westchester contends that Mulready can succeed only to the rights of Red Rock, not to those of any of Red Rock's former directors and officers, including Sargent. *Id.* at 14. Therefore, according to Westchester, there is no statutory standing here.

In response, Mulready asserts that he has both contractual and statutory standing to bring this declaratory judgment action. *See generally* [Doc. No. 37]. He contends that *Colony Insurance* is inapposite because he is not asserting a direct action to recover economic damages[4] and Red Rock is a contracting party to the Policy, citing general Oklahoma caselaw that contracts are enforceable only by the parties to the contract or those in privity with it. *See id.* at 2–3; *see also* [Doc. No. 33 at 5–10]. Citing to the standing analysis in *Oldenburg* as instructive, Mulready asserts that it is Red Rock's right of action, not Sargent's, that he seeks to enforce and that it is irrelevant whether

---

[4] To that end, Mulready filed a Stipulation of Partial Dismissal Without Prejudice [Doc. No. 34] of any claim for money damages to the extent one exists in the Declaratory Judgment Complaint [Doc. No. 1].

Mulready "succeeded to the powers of the directors and officers, including Sargent."

[Doc. No. 37 at 4]; *see also* [Doc. No. 33 at 8–9]; *Fed. Sav. & Loan Ins. Corp. v.*

*Oldenburg*, 671 F. Supp. 720 (D. Utah 1987).

A.    **Law Regarding Standing**

This Court may hear disputes only when the plaintiff has standing to sue, and

standing has two aspects: constitutional and prudential. "First, standing has a

constitutional component arising from Article III's requirement that federal courts hear

only genuine cases or controversies." *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130,

1164 (D.N.M. 2020). "Second, standing has a prudential component." *Id.* (citing

*Habecker v. Town of Estes Park*, 518 F.3d 1217, 1224 n.7 (10th Cir. 2008) (noting that

prudential standing concerns may prevent judicial resolution of a case even where

constitutional standing exists)).

Standing is a preliminary determination, and the burden of establishing standing

rests on the party invoking federal jurisdiction. *See W. Watersheds Project v. Interior Bd.*

*of Land Appeals*, 62 F.4th 1293, 1296 (10th Cir. 2023) (citing *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 158 (2014)); *see also Colo. Outfitters Ass'n v. Hickenlooper*,

823 F.3d 537, 543 (10th Cir. 2016) (explaining that Article III standing cannot be

assumed and that the court must resolve issues of standing before it may reach the merits

of an issue). To that end, Mulready must "allege . . . facts essential to show jurisdiction."

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation omitted). "[S]tanding

cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must

affirmatively appear in the record.'" *Id.* (citations omitted); *see also Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (same).

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Shields Law Grp., LLC v. Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1279 (10th Cir. 2024) (quoting *Defs. of Wildlife v. Everson*, 984 F.3d 918, 944–45 (10th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1)). Thus, to satisfy Article III's case or controversy requirement, a plaintiff must demonstrate standing by showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *W. Watersheds Project*, 62 F.4th at 1296 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

"Prudential standing is not jurisdictional in the same sense as Article III standing." *McAleenan*, 450 F. Supp. 3d at 1165 (quoting *Finstuen v. Crutcher*, 496 F.3d 1139, 1147 (10th Cir. 2007)). Thus, the Court "considers the question [of prudential standing] at the motion to dismiss stage under the Rule 12(b)(6) standard, not the Rule 12(b)(1) standard." *Utah Physicians for a Healthy Env't, Inc. v. TAP Worldwide, LLC*, 582 F. Supp. 3d 881, 885 n.18 (D. Utah 2022); *see also VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 n.4 (10th Cir. 2017) ("assum[ing] without deciding that it is appropriate to dismiss a complaint under Rule 12(b)(6), rather than Rule 12(b)(1), when the plaintiff lacks prudential standing" because such standing is not jurisdictional (citing cases)).

Prudential standing has three requirements: (1) "a plaintiff must assert his own rights, rather than those belonging to third parties"; (2) "the plaintiff's claim must not be a generalized grievance shared in substantially equal measure by all or a large class of citizens"; and (3) "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *McAleenan*, 450 F. Supp. 3d at 1165 (quoting *Bd. of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002)). The zone-of-interests analysis "is an issue that requires [the court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). Statutory standing "extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *See id.* at 129 (internal quotation marks and citation omitted).

**B.    Analysis**

As the party invoking federal jurisdiction, Mulready has the burden to establish standing. At the pleading stage, he must allege facts demonstrating (1) that he suffered or likely will suffer an injury in fact, (2) that the injury likely was caused or will be caused by Westchester, and (3) that the injury likely would be redressed by the requested judicial relief. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

To show an injury in fact, a plaintiff must demonstrate "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In other words, the injury in fact "must be real," "must affect 'the plaintiff in a personal and individual way,'" and "must have already occurred or be likely to occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381 (first quoting *Lujan*, 504 U.S. at 560 n.1; then citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Mulready alleges that the liquidation order vests him as receiver with the title to all contracts and rights of action of Red Rock, the insurer in liquidation. Compl. ¶ 1. He seeks a declaration of rights under the Policy issued by Westchester to Red Rock's parent company, BMSI, and under which Red Rock is a named insured. *Id.* ¶ 5. Further, he alleges the existence of a timely filed claim by Sargent. *Id.* ¶ 13. Mulready alleges that Westchester's erroneous interpretation of the Policy resulted in Westchester breaching its contract with Red Rock by denying coverage for Sargent based on Endorsement 6, the "Regulatory Exclusion," thereby causing harm to Red Rock "in the form of substantial actual and prospective financial damages." *Id.* ¶¶ 14–16, 30. Alternatively, or in addition to, Mulready alleges that Westchester through its denial of coverage to Sargent declared "its intent not to provide coverage under the Policy," resulting in Westchester's anticipatory repudiation of its contract with Red Rock. *Id.* ¶¶ 33–34. Further, he alleges that an "'actual controversy' exists" because "Westchester's denial of coverage resulted in a substantial dispute concerning insurance coverage between Westchester, which issued the Policy, and Red Rock, which is an insured under the Policy (as well as Sargent, for that matter)." *Id.* ¶ 27.

"[S]tanding is not dispensed in gross;" thus, a plaintiff must demonstrate standing for each claim and for each form of relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Asserting breach of contract and anticipatory repudiation claims, Mulready seeks a declaration that Westchester wrongly denied coverage to Sargent. Just like suits for every other type of remedy, declaratory judgment actions must satisfy Article III's standing requirements. *See California v. Texas*, 593 U.S. 659, 672 (2021) (explaining that the DJA, on its own, "does not provide a court with jurisdiction"). "Because declaratory judgment statutes are 'strictly procedural' and 'without inherent substantive dimensions,' the Court's standing analysis for [Mulready's] declaratory relief claim is effectively subsumed by its standing analysis for [Mulready's] substantive claims." *See Klonis v. Marine Corps Ass'n*, Civ. No. 1:24-46 GJF/LF, 2024 WL 2721875, at *4 (D.N.M. May 28, 2024) (quoting *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1328 n.5 (10th Cir. 2022)).

Mulready's standing to pursue declaratory relief therefore turns on whether he has standing to pursue his breach of contract and anticipatory repudiation claims against Westchester. *See Klonis*, 2024 WL 2721875, at *4; *see also Atlas Biologicals*, 50 F.4th at 1328 n.5 (concluding that the court's focus should be on whether the plaintiff has standing to litigate its substantive state law claims); *cf. Warth v. Seldin*, 422 U.S. 490, 499–500 (1975) (describing prudential standing as "closely related" to Article III concerns). Generally, "a party has standing under the DJA when seeking to resolve a coverage dispute." *United Fin. Cas. Co. v. Rocha*, Case No. 2:22-cv-00737-MLG-GBW, 2023 WL 4686248, at *3 (D.N.M. July 21, 2023) (citing cases and explaining that such

"decisional authority recognizes that insurance litigation frequently involves a real, and often imminent, threat of harm to the parties"). "The DJA provides a means for these 'controversies to be settled before they ripen into violations of law or a breach of contractual duty.'" *See id.* (quoting 10B Charles Alan Wright, Arthur Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2751, at 429 (4th ed. 2016)).

However, "when rights of third parties are implicated," as in this action, the Supreme Court has acknowledged that "[t]here are good and sufficient reasons for . . . prudential limitation[s] on standing." *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 80 (1978). Additionally, where a plaintiff lacks prudential standing, the Tenth Circuit approves of proceeding "directly to that issue without deciding whether [a plaintiff] has constitutional standing or whether the case is moot." *See Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999)). Here, whether Mulready has alleged an injury in fact, i.e., an invasion of a legally protected interest, or whether he is attempting to assert rights belonging to a third party are issues that necessarily overlap; thus, the Court proceeds directly to whether Mulready has prudential standing to assert the claims.

> ### 1) Mulready, standing in Red Rock's shoes, lacks contractual standing under the Policy to assert claims involving Westchester's denial of coverage to Sargent.

The liquidation order vests Mulready as the receiver with the title to all contracts and rights of action of Red Rock, the insurer in liquidation. Compl. ¶ 1. Thus, Mulready stands in Red Rock's shoes and can assert only the rights that Red Rock would be permitted by law to assert. From the Court's review of the Complaint, Mulready's claims

14

for declaratory judgment involve Westchester's denial of coverage to Sargent, not Red Rock. In other words, Sargent sought coverage for the claim made against him by Red Rock over his employment agreement and breach of fiduciary duties, Westchester denied coverage, and now Red Rock—not Sargent or his estate—is seeking to enforce coverage.

In this diversity action, Oklahoma substantive law governs the interpretation of the Policy. *See, e.g.*, *Houston Gen. Ins. Co. v. Am. Fence Co.*, 115 F.3d 805, 806 (10th Cir. 1997) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state."). Oklahoma law provides that an insurance contract that is unambiguous is construed according to its plain terms. *See Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996). Whether an insurance contract is ambiguous is a matter of law for the court to determine. *See id.*

Under the Policy, coverage potentially exists for Red Rock in only two situations: (1) loss resulting from a claim made against directors and officers involving a wrongful act, for which Red Rock has indemnified the directors and officers (Insuring Clause Two); and (2) loss resulting from a claim for a wrongful act made against Red Rock (Insuring Clause Three). [Doc. No. 19-2 at 22].[5] Mulready does not allege in the

---

[5] The relevant Insuring Clauses in the Policy provide as follows:

1. The Insurer shall pay the Loss of the Directors and Officers for which the Directors and Officers are not indemnified by the Company and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period or, if elected, the Extended Period, and reported to the insurer pursuant to subsection E1 herein, for any Wrongful Act taking place prior to the end of the Policy Period.

Complaint that Red Rock has indemnified Sargent in connection with his conduct, nor does he allege a claim for a wrongful act against Red Rock. Thus, first-party claims by Red Rock would be outside the scope of the Policy.

However, Mulready asserts under Insuring Clause One of the Policy that he has all the rights of Red Rock, and that Red Rock arguably purchased the insurance policy for the benefit of its directors and officers, i.e., Sargent (third-party coverage). Certainly, under existing Oklahoma law, Sargent, as a third-party beneficiary, could bring an action to enforce the Policy. *See* Okla. Stat. tit. 15, § 29. Mulready, however, cites only non-binding case law from other jurisdictions to support his position that he can bring this action to enforce the third-party beneficiary rights of Sargent. He argues that because Red Rock is in privity with Westchester, he as receiver is in privity with Westchester. Privity, however, is not the correct analysis under *Colony Insurance*, which the Court finds applicable here.

---

2. The Insurer shall pay the Loss of the Company for which the Company has indemnified the Directors and Officers and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period or, if elected, the Extended Period, and reported to the Insurer pursuant to subsection E1 herein, for any Wrongful Act taking place prior to the end of the Policy Period.

3. The Insurer shall pay the Loss of the Company which the Company becomes legally obligated to pay by reason of a Claim first made against the Company during the Policy Period or, if applicable, the Extended Period, and reported to the Insurer pursuant to subsection E1 herein, for any Wrongful Act taking place prior to the end of the Policy Period.

[Doc. No. 19-2 at 22].

In *Colony Insurance Company v. Burke*, the Tenth Circuit distinguished first-party insurance policies from third-party liability insurance policies. 698 F.3d 1222, 1229 (10th Cir. 2012). Under the latter, the insurer pays "benefits to a third party to whom the first-party insured has become liable." *See id.* Under Insuring Clause One of the Policy, Westchester "shall pay the Loss of the Directors and Officers [i.e., Sargent] for which the Directors and Officers [i.e., Sargent] are not indemnified by the Company [i.e., BMSI/Red Rock] and which the Directors and Officers [i.e., Sargent] have become legally obligated to pay . . . ." [Doc. No. 19-2 at 22]. Here, Mulready is making a claim as a third-party claimant under a liability policy for injury caused by another insured, Sargent. In other words, under the Policy, Red Rock is "a first party, [but] *only* with respect to claims by others *against* [Red Rock], not claims brought *by* [Red Rock] against another insured." *Colony Ins.*, 698 F.3d at 1230 (internal quotation marks omitted). Adopting its reasoning from *Coyle*, the Tenth Circuit in *Colony Insurance* concluded that "where a person making a third-party claim under a given liability policy also happens to be an insured, the insurer's duty to that person, with respect to that claim, is defined not by the person's status as insured, but by the person's status as claimant." *See id.*; *see also Coyle v. State Farm Fire & Cas. Co.*, 120 F.3d 270, 1997 WL 423118, at *1 (10th Cir. 1997) (unpublished table decision) ("The fortuitous fact that an insured person is making a liability claim against a policy of insurance under which that person is also an insured is not the factor that determines either the nature of the claim or the duty owed the claimant."). Thus, the question here is whether Mulready, as the receiver for Red Rock, has standing in Red Rock's status as a claimant, not as an insured.

"[W]hether a third-party claimant is also a third-party beneficiary with standing to bring a . . . claim against an insurer" depends on the intent of the contracting parties as reflected in the Policy. *Colony Ins.*, 698 F.3d at 1230. "Although '[i]t is not necessary that [a third] party be specifically named as a beneficiary' in order to have standing, the contract must be made 'expressly' for the third party's benefit, which 'means in an express manner; in direct or [unmistakable] terms; explicitly; definitely; directly.'" *Id.* (first and second alterations in original) (citing *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981)). But "[t]he benefit cannot be enforced if it has to be implied from the terms of the contract or results incidentally from its performance." *Id.* (quoting *Oil Cap. Racing Ass'n, Inc. v. Tulsa Speedway, Inc.*, 628 P.2d 1176, 1179 (Okla. Civ. App. 1981)).

The Court's analysis begins and ends with the plain language of the Policy. Here, Mulready is making a claim for coverage under Insuring Clause One on behalf of Red Rock because of Sargent's misconduct. Such a claim, however, is not covered by the Policy. Insuring Clause One provides coverage only to Red Rock's directors or officers and does not provide coverage to Red Rock for its own losses. No intent to benefit Red Rock is apparent from the Policy's terms in Insuring Clause One, nor has Mulready alleged facts in his Complaint demonstrating a clear intent to make Red Rock an intended third-party beneficiary under the Policy. Thus, Mulready lacks contractual standing under the Policy to assert claims involving Westchester's denial of coverage to Sargent under Insuring Clause One.

> **2)    *Mulready, standing in Red Rock's shoes, also lacks statutory standing to assert claims for coverage on Sargent's behalf.***

Mulready alleges he stands in Red Rock's shoes pursuant to the OUILA, Okla. Stat. tit. 36, § 1922, and the liquidation order, and that he is "vested by operation of law with the . . . contracts [and] rights of action . . . of Red Rock." Compl. ¶ 1. Mulready does not allege in the Complaint that he, as receiver, statutorily succeeds to the powers of the directors and officers, including Sargent. Rather, he only succeeds to those rights that Red Rock by law would be able to assert.

Neither the OUILA nor the liquidation order, however, authorizes Mulready, as receiver, to succeed to the rights of Red Rock's directors or officers. *See, e.g.*, Okla. Stat. tit. 36, § 1922(A)(3)(a) ("The receiver shall have the power . . . [t]o conduct litigation, including . . . to institute *in the name of the insurer* or in the receiver's own name, suits or other legal proceedings . . . .") (emphasis added); *see also* Compl. ¶ 1 (citing language of the liquidation order). Although Mulready relies on *Federal Savings & Loan Insurance Corp. v. Oldenburg*, 671 F. Supp. 720 (D. Utah 1987), his reliance is misplaced. *See* [Doc. Nos. 33 at 8–9; 37 at 4–5]. There, the Federal Savings and Loan Insurance Corporation, as the conservator and receiver for State Savings, was expressly vested, by statutory and regulatory authority, with "all the powers of [State Savings'] members, officers, and directors." 671 F. Supp. at 723 (citing 12 U.S.C. § 1464(d)(11) (Supp. 1987)). Here, a receiver's rights under the OUILA are not that expansive, nor are Mulready's under the Policy.

Thus, Mulready has not alleged sufficient facts to establish statutory standing to assert claims for coverage on Sargent's behalf.

## IV.    CONCLUSION

For these reasons, the Court concludes that Mulready, standing in Red Rock's shoes, lacks contractual and statutory standing to seek declaratory judgment on claims involving another insured, i.e., Sargent. Accordingly, the Court GRANTS the Motion to Dismiss filed by Defendant Westchester Fire Insurance Company [Doc. No. 19] under Federal Rule of Civil Procedure 12(b)(6) and DISMISSES the Complaint.[6]

---

[6] Westchester seeks dismissal of the Complaint with prejudice. [Doc. No. 35 at 4, 6]; *see Colony Ins.*, 698 F.3d at 1228 n.6 (explaining that statutory or contractual standing analysis "goes to the merits of the claim and not the jurisdiction of th[e] Court to hear it in the first instance"); *see also Asphalt Recovery Specialists, Inc. v. Arthur J. Gallagher & Co.*, No. 23-1131, 2024 WL 2931037, at *2–3 & n.3 (10th Cir. June 11, 2024) (unpublished) (while opting not to use the terminology of contractual or statutory standing from *Colony Insurance* to avoid confusion with jurisdictional standing, recognizing that dismissals on that basis "are merits rulings" and that the dismissal of the defendants should have been with prejudice).

Mulready does not specifically address Westchester's request for a with-prejudice dismissal. However, in his Response to Westchester's Supplemental Brief [Doc. No. 37], Mulready, while conceding he did not allege such in the Complaint, raises the prospect of coverage for Red Rock under Insuring Clause Two, in the event Red Rock ultimately indemnifies Sargent for a judgment, and cites to the Third Restated Bylaws for Red Rock for support. *See* [Doc. No. 37 at 2, 3–4 and n.1]. He indicates that it is "foreseeable that such will be the grounds of a subsequent amendment to the Complaint." *See id.* at n.2; *see also* [Doc. No. 26 at 4 n.1] (where Mulready notes that he requests leave to amend to clarify his claims rather than face dismissal if the Court determines they are "inartfully pled").

Under Local Civil Rule 7.1(c), "[a] response to a motion may not also include a motion or cross-motion made by the responding party." *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); LCvR15.1 (explaining that a party moving to amend a pleading must attach the proposed pleading as an exhibit to the motion); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a

IT IS SO ORDERED this 25th day of September 2024.


JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

formal motion." (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))). Additionally, a plaintiff cannot amend his complaint by adding factual allegations in response to a defendant's motion to dismiss. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (limiting the court to allegations contained in the complaint when determining whether to grant a motion to dismiss).

The Court denies any request to seek leave to amend made in any response or surreply by Mulready without prejudice to the submission of a proper motion. The Court will withhold its judgment of dismissal with prejudice on the current Complaint for 14 days to see if Mulready presents a proper motion for leave to amend. *See* Fed. R. Civ. P. 15(a)(2); LCvR15.1. The Court sets this 14-day deadline to allow the parties through counsel to confer before any such motion is filed; if more time is needed for a meaningful conference, then Mulready should seek additional time in advance of this deadline. Given Mulready's statement, "in the event Red Rock ultimately indemnifies Sargent for a judgment," [Doc. No. 37 at 3], the Court would need to understand in any motion for leave to amend whether this event has been satisfied or whether the amendment would, at this juncture, suffer from jurisdictional defects or better be brought in a new action after this event has been satisfied. *Cf. Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999) (explaining that a proposed amendment is futile if the amended complaint would be subject to dismissal). Absent a timely and proper motion for leave to amend before the Court's deadline, or some other timely filing, the Court will enter a judgment dismissing the Complaint [Doc. No. 1] with prejudice.